■ In the Matter of CLUB MARAKESH, INC., Petitioner, v TAX COMMISSION OF THE STATE OF NEW YORK et al., Respondents.—Casey, J. Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court, entered in Albany County) to review a determination of respondent State Tax Commission which sustained a sales and use tax assessment imposed under Tax Law articles 28 and 29.

Petitioner, the operator of a Long Island discotheque, argues that respondent State Tax Commission erred in using external indices to determine petitioner's revenues and that the methodology used by the Tax Commission to arrive at a revenue figure was so flawed that the determination must be annulled. We reject these arguments.

Despite requests by the Audit Division of the Department of Taxation and Finance that petitioner produce its books and records for an audit, and that petitioner retain certain adding

machine and cash register tapes and guest checks for use by the auditors, petitioner failed to produce the requested books and records until the hearing on its petition challenging the results of the audit. Petitioner also continued its practice of discarding the adding machine and cash register tapes and guest checks. Thus, they were never produced. Due to the lack of records, and with the expiration of the time limitation for the audit period fast approaching,[1] three tax auditors visited petitioner's club on August 19, 1981 to observe the club's operations and internal controls of records and cash receipts in order to verify petitioner's reported sales. Based upon these observations and conversations with club employees, estimated weekly receipts from admissions and from the sale of alcoholic beverages were determined. The weekly estimates were multiplied by the number of weeks in the quarter to provide estimates for the quarter. Since no actual reported sales figures for the quarter were available, the lead auditor compared the estimates with the reported sales for the same quarter the previous year, which yielded a margin of error of 123.674%. This margin of error was applied to reported sales for the audit period, resulting in a substantial deficiency to which penalties and interest were added. After a hearing, at which petitioner finally produced books and records, the Tax Commission made certain adjustments to the audit, resulting in a substantial reduction of the deficiency, but sustained the use of external indices to determine the amount of tax due.

Testimony at the hearing revealed that petitioner's employees recorded admission charges on an adding machine tape and that beverage sales were recorded on guest checks or cash register tapes. Receipts from admission charges were reconciled against the adding machine tape each evening and, at the end of each week, all liquor receipts were reconciled against the guest checks and cash register tapes. Gross sales were recorded on a weekly basis in a sales receipt journal, and the source documents—the tapes and guest checks—were discarded. Petitioner contends that its cash receipt journal, which it was required to keep because it did not give receipts to its customers (20 NYCRR 533.2 [b] [1]), was adequate, precluding resort to external indices. The Tax Commission rejected this contention since the source documents from which the figures in the journal were derived were not available for verification of the journal's figures. There is nothing

1. Petitioner refused to agree to an extension of the Statute of Limitations for the audit period in question, despite the Department's request for such an extension.

irrational, unreasonable or arbitrary in this determination *(see,* 20 NYCRR 533.2 [b] [2]; *Matter of Giordano v State Tax Comm.,* 145 AD2d 726). We reject petitioner's argument that the self-serving testimony of its president as to the accuracy of the journal must be accepted as sufficient verification.

The Audit Division was clearly justified in resorting to external indices for the purpose of computing the tax due since petitioner failed to make its records available to the auditor *(see, Matter of Continental Arms Corp. v State Tax Comm.,* 72 NY2d 976, 978). Although petitioner did produce its records at the hearing on its challenge to the assessment, the Tax Commission rationally concluded that the records were not adequate for proper verification. Accordingly, the Tax Commission did not err in sustaining the use of external indices *(see, Matter of Sol Wahba, Inc. v New York State Tax Comm.,* 127 AD2d 943; *see also, Matter of Giordano v State Tax Comm., supra).*

Petitioner's remaining arguments can be distilled to a single proposition: the potential for error is so great in both the information and methodology used to calculate the taxes due that the Tax Commission's determination is unsupported by substantial evidence and irrational. Since petitioner's records were incomplete, the Department was required to select an audit method reasonably calculated to reflect the taxes due, and upon its challenge to the assessment petitioner bore the burden to establish by clear and convincing evidence that the method of audit or the amount of the tax assessed was erroneous *(Matter of A & J Gifts Shop—Vanni v Chu,* 145 AD2d 877, *lv denied* 74 NY2d 603). It is well established that "where the taxpayer's own failure to maintain proper records prevents exactness in determination of sales tax liability, exactness is not required" *(Matter of Meyer v State Tax Comm.,* 61 AD2d 223, 228, *lv denied* 44 NY2d 645; *see also, Matter of S.H.B. Super Mkts. v Chu,* 135 AD2d 1048, 1050), and the fact that a longer test period might have given a better picture of petitioner's business and thus its tax liability does not satisfy petitioner's burden of proof *(see, Matter of Markowitz v State Tax Comm.,* 54 AD2d 1023, *affd* 44 NY2d 684). Nor was there any error in the Tax Commission's reliance on the auditor's report of hearsay statements by anonymous employees of petitioner *(see, Matter of Fee Plan v Department of Envtl. Conservation,* 118 AD2d 855, 856).

While petitioner points to a number of potential errors in the information and method used by the Tax Commission, petitioner's most strenuous objection is directed at the use of

the quarterly reported sales figures from the prior year in determining the margin of error. The Tax Commission used the prior year's figures since the reported sales figures for the quarter in question were not in the record. Petitioner implies that at the time of the hearing the figures were available from the quarterly report which it was required to file with the Department. While there is merit in petitioner's contention that use of unadjusted figures from a prior year could have distorted the margin of error,[2] we are of the view that the potential distortion is attributable to petitioner. At the beginning of the hearing, petitioner was advised that any material which petitioner wanted the Tax Commission to consider had to be introduced into the record at the hearing. Petitioner followed this directive with respect to the reported sales figures for the final three quarters of the audit period, which the auditors had estimated, by introducing copies of the returns filed with the Department, but it failed to do so with respect to the reported sales for the quarter used in the calculation of the margin of error.

Our review of the record reveals no basis for disturbing the Tax Commission's determination and it must, therefore, be confirmed.

Determination confirmed, and petition dismissed, without costs. Mahoney, P. J., Casey, Yesawich, Jr., Levine and Mercure, JJ., concur.

---

2. When the auditor had to resort to estimates for the reported sales figures for the final three quarters of the audit period, he used figures from the prior year which he adjusted for increases in business. No such adjustment appears to have been made in the prior year's figures used to determine the margin of error.